TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division
KEVIN J. BUTLER
Assistant United States Attorney
Chief, Major Crimes Section
STEPHEN T. MERRILL (Cal. Bar No. 255827)
Special Assistant United States Attorney
Major Crimes Section
3403 10th Street, Suite 200
Riverside, California 92501
Telephone: (951) 276-6267
Facsimile: (951) 276-6202
E-mail: Stephen.Merrill@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROY JAMES CAREY and<br>NATHALIE MARIE CAREY,<br><br>Defendants. | ED CR No. 25-00189-SSS-1<br><br><u>UNITED STATES OF AMERICA'S SENTENCING POSITION FOR DEFENDANT ROY JAMES CAREY</u><br><br>Hearing Date: June 12, 2026<br>Hearing Time: 10:00 a.m. |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California, and Special Assistant United States Attorney Stephen T. Merrill, hereby files its sentencing position for defendant Roy James Carey ("defendant").

The government's filing is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

The government reserves the right to file any supplemental sentencing position that may be necessary.

Dated: May 11, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney
Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Chief, Major Crimes Section

STEPHEN T. MERRILL
Special Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

Defendant Roy James Carey is a dangerous and violent career criminal. Throughout the two decades before he trafficked firearms in this case, defendant racked up felony convictions in four separate cases for violent offenses, two separate cases for drug trafficking, and one case for illegal firearm possession. In this case, defendant possessed a variety of firearms and ammunition--including a short-barreled rifle--that he sold to an undercover federal agent in four separate video-recorded deals. His career as a violent and dangerous criminal needs to be stopped.

On March 20, 2026, defendant entered a guilty plea to Count Two of the Indictment which charged defendant with a violation of 18 U.S.C. § 922(g)(1): Felon in Possession of a Firearm and Ammunition.

On May 8, 2026, The United States Probation Office filed its Presentence Investigation Report ("PSR"), in which it calculated defendant's total offense level at 25. The Probation Office further determined that defendant falls within Criminal History Category VI, resulting in an advisory Guidelines range of 110 to 137 months. The government agrees with the PSR Guidelines calculations.

Based on the section 3553(a) factors and an individualized assessment of defendant's case, the government recommends the following sentence: 120 months' imprisonment, followed by a three-year period of supervised release, and special assessment of $100.

## II. STATEMENT OF FACTS

A comprehensive and detailed factual basis was prepared and filed in the Government's Brief in Support of Detention for Defendant Roy James Carey. (Dkt. 10.) A copy has been included as Exhibit 1. In Summary, on four separate occasions, defendant sold an undercover agent multiple firearms and ammunition, including a short-barreled rifle.

## III. SENTENCING GUIDELINES CALCULATION

The PSR calculates defendant's total offense level as 25, which includes a 3-point reduction for acceptance of responsibility. (PSR ¶ 37.) The total offense level was determined based on the following calculation: a base offense level of 22, a two-level increase for possessing seven firearms, a four-level increase for possession of a ghost gun, and a three-level reduction for acceptance of responsibility. (PSR ¶¶ 25-37.)

In addition, the PSR determined that defendant falls within Criminal History category VI. (PSR ¶¶ 41-52.) The government concurs with the PSR's calculations.

## IV. ANALYSIS OF THE SECTION 3553(a) FACTORS

The government believes that the 3553(a) factors, in particular the nature and circumstances of the offense, the need to promote respect for the law and deter future crimes, and the need to protect the community, warrant the requested 120-month sentence.

### A. The Seriousness of the Crimes and Defendant's Criminal History Support a Serious Custodial Sentence

The nature and circumstances of the offenses justify a significant custodial sentence. Defendant has a long and violent criminal history, and the current offenses are dangerous and serious. The illegal possession and distribution of firearms by criminals has caused death and destruction on the streets of our communities. On top of that, defendant is charged with illegally possessing a short-barreled rifle. Short-barreled rifles "are inherently dangerous and, when possessed unlawfully, serve only violent purposes." U.S.S.G. § 4B1.2, amend. 798 (effective Aug. 1, 2016). Additionally, defendant discussed being able to get any type of firearm the UC was willing to purchase, including .50 caliber rifles. (Exhibit 1, Pg. 16.) Defendant explained to the UC he met his supplier while serving time in prison. (Id.) Thus, the serious nature of this crime requires a significant custodial sentence.

Defendant's criminal history is also extensive. Defendant has exhibited a continuous willingness to engage in dangerous and violent felony conduct. Defendant

has felony convictions in four separate cases for violent offenses, two separate cases for drug trafficking, and one case for illegal firearm possession. Nothing has deterred defendant is his criminal activities. Defendant's persistence in engaging in criminal activity represents a serious danger to the community.

When considering defendant's conduct in light of his prior criminal history, a significant custodial sentence is required to deter defendant and protect the public.

### B. A Serious Custodial Sentence is Necessary to Promote Respect for the Law and Protect the Community

The Court should impose the recommended sentence of 120 months to promote respect for the law, protect the community, and deter future crimes by defendant and others. Defendant has proven over and over again that the only way he is deterred from criminal activity is custodial time. His violent past and current conduct highlight his danger to his family and the community. A significant custodial sentence in this case is necessary to promote respect for the law and deter defendant from breaking the law and endangering the community.

## V. CONCLUSION

On balance, and for the reasons set forth above, the government respectfully requests that defendant be sentenced as follows: (1) a 120-month term of imprisonment; (2) a three-year period of supervised release; and (3) a special assessment of $100.

# EXHIBIT 1

BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
JOHN A. BALLA (Cal. Bar No. 295474)
Assistant United States Attorney
Deputy Chief, Riverside Branch Office
3403 Tenth Street, Suite 200
Riverside, CA 92501
Telephone: (951) 276-6246
Facsimile: (951) 276-6202
E-mail: john.balla@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROY JAMES CAREY and<br>NATHALIE MARIE CAREY,<br><br>Defendants. | No. ED CR 25-189-SSS-1<br><br>GOVERNMENT'S BRIEF IN SUPPPORT OF DETENTION FOR DEFENDANT ROY JAMES CAREY |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney John A. Balla, hereby files its brief in support of its request for detention for defendant Roy James Carey.

The government's position is based upon the attached memorandum of law, the attached exhibits, the files and records in this case, the Pretrial Services Report prepared in this case, and any other evidence or argument that the Court may wish to consider. The

government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.

Dated: June 26, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division

/s/
JOHN A. BALLA
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

TABLE OF CONTENTS

PAGE

I. INTRODUCTION.....1

II. FACTUAL BACKGROUND.....1

A. The Offense Conduct.....2

1. October 28, 2024: Two pistols and ammunition from defendant.....2

2. November 13, 2024: An SBR, a stolen pistol, and ammunition from defendant (delivered by Nathalie).....4

3. November 26, 2024: A shotgun, a pistol, and ammunition from defendant.....5

4. April 16, 2025: A rifle, a pistol, and ammunition from defendant.....7

B. Defendant's Criminal History.....8

1. The 2007 Firearm Case.....10

2. The 2007 Assault with a Deadly Weapon Case.....11

3. The 2010 Assault with a Deadly Weapon Case.....12

4. The 2014 Drug Case.....12

5. The 2023 Domestic Violence Case.....13

III. ARGUMENT.....14

A. Nature and Circumstances of the Offenses.....15

B. Weight of the Evidence.....16

C. Defendant's History and Characteristics.....18

D. The Nature and Seriousness of the Danger Posed.....19

IV. CONCLUSION.....19

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

United States v. Calabrese, 436 F. Supp. 2d 925 (N.D. Ill. 2006) .......... 17

United States v. Hir, 517 F.3d 1081 (9th Cir. 2008) .......... 18

United States v. Honeyman, 470 F.2d 473 (9th Cir. 1972) .......... 17

United States v. Motamedi, 767 F.2d 1403 (9th Cir. 1985) .......... 14, 17

United States v. Reynolds, 956 F.2d 192-93 (9th Cir. 1992) .......... 19

United States v. Tortora, 922 F.2d 880 (1st Cir. 1990) .......... 18

United States v. Townsend, 897 F.2d 989 (9th Cir. 1990) .......... 15

United States v. Walker, 68 F.4th 1227 (9th Cir. 2023) .......... 15

United States v. Zhang, 55 F.4th 141 (2d Cir. 2022) .......... 17

## FEDERAL STATUTES

18 U.S.C. § 3142 .......... passim

18 U.S.C. § 922 .......... 1, 15

26 U.S.C. § 5861 .......... passim

## OTHER

Cal. Penal Code § 182 .......... 9

Cal. Penal Code § 186.22 .......... 10

Cal. Penal Code § 245 .......... 9, 10

Cal. Penal Code § 273.5 .......... passim

Cal. Health & Safety Code § 11370.1 .......... 9

Cal. Penal Code § 12021 .......... 8

U.S.S.G. § 4B1.2 .......... 15

## I. INTRODUCTION

Defendant Roy James Carey has rightly earned his designation as an armed career criminal. Throughout the two decades before he trafficked firearms in this case, defendant racked up felony convictions in four separate cases for violent offenses, two separate cases for drug trafficking, and one case for illegal firearm possession. He's charged in this case with possessing a variety of firearms and ammunition--including a short-barreled rifle--that he sold to an undercover federal agent in four separate video-recorded deals. His violent past means he now faces a mandatory minimum sentence of 15 years' imprisonment and a maximum of life imprisonment under the Armed Career Criminal Act ("ACCA").

Defendant's history and the nature and circumstances of the charged offenses show that defendant is a danger to the community who would not abide by release conditions. Defendant also faces significant penalties for his crimes with heavy evidence virtually guaranteeing his conviction, giving him a large incentive to run. The Court should detain defendant as a danger to the community and a risk of nonappearance.

## II. FACTUAL BACKGROUND

The indictment in this case charges defendant with four counts of ACCA (18 U.S.C. §§ 922(g)(1), 924(e)) and one count of possessing an unregistered short-barreled rifle (26 U.S.C. § 5861(d)). The counts arise from four pre-arranged deals where defendant sold firearms and ammunition to an undercover federal agent who was wearing high-quality audio- and video-recording equipment. The screenshots below come from the video recordings of the deals.

**A. The Offense Conduct**

In September 2024, an undercover ATF agent (the "UC") was speaking with D.L., the target of a separate firearm- and drug-trafficking investigation. (Ex. 1 (ATF ROI #1) at 1.) In September and October, while D.L. was still unaware that the UC was law enforcement, D.L. mentioned that he had an associate who could sell the UC firearms. (Id.) D.L. forwarded the UC photos of guns for sale, and the UC said he was interested in buying. (Id.) On October 28, D.L. gave the UC his associate's address in Norco and said that his associate would be waiting for the UC. (Id.) Agents conducted database checks and saw that the address was associated with defendant and his wife, co-defendant Nathalie Marie Carey.

1. October 28, 2024: Two pistols and ammunition from defendant

On October 28, 2024, the UC drove to the home address that D.L. provided. (Id.) The UC saw defendant[1] doing something in the passenger side of a truck parked in the home's driveway. (Id.) The UC got out of his truck and greeted defendant. (Id. at 2.) The UC asked if defendant had the firearms D.L. asked about, and defendant pointed the UC to a folded bundle of rags inside the back of the truck. (Id.) Inside the rags were the two pistols the UC arranged to buy. (Id.) The UC asked if defendant could get more firearms, and defendant said that "it depends" but if "everything checks out my people will have whatever." (Id. at 2-3.) They then talked about other guns that defendant can get easily, including "mini ARs." (Id. at 3.) He then gave the UC his phone number so they could speak

[1] The UC pulled defendant's driver's license photo after the deal and confirmed it was him.

directly to each other in the future. The UC then paid defendant, defendant gave the UC an additional two loaded magazines, and the UC left. (Id.)

The firearms and ammunition the UC purchased were:

- A Canik55, Model TP-9SA, 9mm pistol, bearing serial number 14AP05554;
- A Ruger, Model SR9C, 9mm pistol, bearing serial number 333-19487; and
- Four rounds of Poongsan 9mm ammunition;
- Two rounds of Companhia Brasileira de Cartuchos 9mm ammunition;
- Two rounds of Winchester 9mm ammunition;
- Two rounds of Remington 9mm ammunition; and
- Two rounds of Armscor 9mm ammunition.

After the deal, agents obtained T-Mobile for the phone number defendant provided. The records came back showing that the number was subscribed to defendant at the Norco address.



2. November 13, 2024: An SBR, a stolen pistol, and ammunition from defendant (delivered by Nathalie)

On November 3, defendant texted the UC and let him know he had an AR for sale for $2,000 and an AR12 for sale for $2,500. (Ex. 2 (ATF ROI #3) at 1.) They texted back and forth over the next ten days about the UC buying the AR and a pistol. (Id.) They arranged for the UC to pick them up at defendant's house on the morning of November 13, and in arranging logistics, defendant said that the UC might have to pick them up from defendant's wife.

That morning, the UC again drove to the house and saw Nathalie[2] coming out of the house. (Id. at 2.) She confirmed that defendant told her the UC would be stopping by, and she went back inside before coming back out with a rifle bag. (Id.) The UC asked, "do you know if they come with clips and everything?" Nathalie confirmed that they did. (Id. at 3.) As the UC was examining the guns, she said, "I tried to fit everything in there; it [the rifle bag] wouldn't shut, though." (Id. at 2.) The UC then paid Nathalie and left. (Id. at 3-4.)

The firearms and ammunition the UC purchased were:

- A privately manufactured 5.56mm rifle, bearing no serial number or other manufacturer's markings, with a barrel length of approximately 10.5 inches;
- A Browning, Model Black Label 1911-380, .380 caliber pistol, bearing serial number 51HZT07759[3]; and
- Twenty-six rounds of Federal .223 caliber ammunition;
- Four rounds of Fiocchi Munizioni .380 caliber ammunition;

---

[2] The UC pulled Nathalie's driver's license photo after the deal and confirmed it was her.

[3] A trace report showed that the pistol was reported stolen from a 2018 burglary in Albuquerque, New Mexico.

- Three rounds of Remington .380 caliber ammunition; and
- One round of Cascade Cartridge Inc. .380 caliber ammunition.




3. <u>November 26, 2024: A shotgun, a pistol, and ammunition from defendant</u>

Between November 14 and November 26, the UC continued to exchange calls and texts about the UC buying guns as well as machinegun conversion devices ("MCDs"). (Ex. 3 (ATF ROI #7) at 1.) They agreed that the UC would buy a shotgun and a pistol from defendant at his house on November 26. (<u>Id.</u> at 1-2.)

That day, the UC met defendant inside defendant's garage. (<u>Id.</u> at 2.) Defendant mentioned he'd have to increase the price from what they originally discussed because defendant's source charged him more than expected. (<u>Id.</u>) The UC mentioned that he had an associate who traffics firearms to Mexico, and the associate asked for a .50 caliber rifle. (<u>Id.</u> at 4.) Defendant said that he could acquire .50

caliber rifles, but they were expensive. (Id.) They also talked more about MCDs, and defendant told the UC that he used to get them for $100 each but the price had since increased to $250 each. (Id. at 3.) Defendant mentioned that possessing an MCD is a serious federal crime. (Id.) Defendant then talked a bit about his firearm source, whom he met while they were both in Pelican Bay state prison. (Id. at 4.) He said that his source obtained the firearms they sell from Arizona and that his source could take special orders with a deposit. (Id.) Defendant went inside, got a trash bag for the UC to hide the firearms, and completed the deal. (Id.)

The firearms and ammunition the UC purchased were:

- A Derya Arms, Model VR-60, 12-gauge shotgun, bearing serial number R144753;
- A Glock, Model 19 Gen 4, 9mm pistol, bearing serial number AEMY488; and
- Fourteen rounds of Tula Cartridge Works 9mm ammunition.






4. <u>April 16, 2025: A rifle, a pistol, and ammunition from defendant</u>

The UC and defendant continued exchanging sporadic texts and calls over the next five months about different guns for sale. (Ex. 4 (ATF ROI #9) at 1.) Eventually, they settled on the UC buying a rifle and a pistol at defendant's house on April 16, 2025. (<u>Id.</u>)

That day, the UC met defendant in his driveway. (<u>Id.</u> at 2.) Defendant mentioned that his source had a "shipment" coming in and that he would have Glock pistols and AK-type rifles for sale. (<u>Id.</u>) He said that the source lives in California but travels to Arizona to get the firearms from an insider at a gun store. (<u>Id.</u>) Defendant gave the UC the rifle inside a rifle bag and a pistol inside a holster, and the UC paid him and left. (<u>Id.</u>)

The firearms and ammunition the UC purchased were:

- A JD Machine Tech, Model TR1, .223 caliber rifle, bearing serial number 12804;

- A Taurus, Model G2C, 9mm pistol, bearing serial number 1C050645; and
- Twenty-seven rounds of Federal .223 caliber ammunition;
- Nine rounds of Hornady 9mm ammunition;
- One round of Fiocchi Munizioni 9mm ammunition;
- One round of Winchester 9mm ammunition; and
- One round of Aguila 9mm ammunition.



**B. Defendant's Criminal History**

Defendant has the following relevant convictions:

| **DATE** | **TYPE** | **VIOLATION** | **SENTENCE** |
|---|---|---|---|
| 05/10/07 | Felony | CA PC § 12021(a)(1): Prohibited Person in Possession of a Firearm<br><br>(Superior Court of the State of California, County of San Bernardino, Case Number FWV700762) | 3 years' imprisonment |

| DATE | TYPE | VIOLATION | SENTENCE |
|---|---|---|---|
| 05/10/07 | Felony | CA PC § 245(a)(1): Assault with a Deadly Weapon<br><br>(Superior Court of the State of California, County of San Bernardino, Case Number FWV700840) | 4 years' imprisonment |
| 03/22/10 | Felony | CA PC § 245(a)(1): Assault with a Deadly Weapon<br><br>(Superior Court of the State of California, County of San Bernardino, Case Number FWV1000367) | 3 years' imprisonment |
| 06/16/14 | Felony | CA PC § 182(a)(1), CA H&S § 11378: Conspiracy to Possess Methamphetamine for Sale<br><br>CA PC § 182(a)(1), CA H&S § 11379: Conspiracy to Transport Methamphetamine<br><br>(Superior Court of the State of California, County of Riverside, Case Number RIF1302900) | 3 years' imprisonment<br><br>2 years' imprisonment |
| 05/12/16 | Felony | CA H&S § 11370.1(a): Possession of a Controlled Substance While Armed<br><br>(Superior Court of the State of California, County of San Bernardino, Case Number 16CR015895) | 4 years' imprisonment |

| DATE | TYPE | VIOLATION | SENTENCE |
|---|---|---|---|
| 06/23/22 | Felony | CA PC § 245(a)(4): Assault by Means Likely to Produce Great Bodily Injury<br><br>CA PC § 186.22(b)(1): Street Gang Terrorism Enhancement[4]<br><br>(Superior Court of the State of California, County of San Bernardino, Case Number FWV20003734) | 2 years' probation<br><br>3 years' imprisonment suspended pending completion of probation |
| 03/24/23 | Felony | CA PC § 273.5: Domestic Violence<br><br>(Superior Court of the State of California, County of Riverside, Case Number RIF1902713) | 3 years' probation with a condition to serve 180 days' jail |

The government obtained police reports that provide more detail for five of these cases.

1. <u>The 2007 Firearm Case</u>

Defendant's 2007 firearm conviction arose from an incident when two Ontario Police Department officers were patrolling an "area that ha[d] become plagued with gang and drug activity." (Ex. 6 (Ontario PD Report) at 1.) The two officers saw defendant walking with another man. (<u>Id.</u>) Defendant was holding his waistband (a gesture consistent with carrying a concealed firearm) and suspiciously looked at the officers. (<u>Id.</u>) The officers tried to approach him for a consensual conversation, but defendant began running. (<u>Id.</u>) As he

[4] According to CDCR records, defendant is a validated Mexican Mafia associate, and he is a documented Pomona County Liner gang member. (Ex. 5 (ATF ROI #2) at 1.)

Case 5:25-cr-00189-SSS Document 1 Filed 05/21/26 Page 15 of 28 Page ID #:56

was running, defendant pulled a sawed-off shotgun from his waistband and tossed it before jumping over a fence adjoining a preschool where several children were playing. (Id.) The shotgun broke as it hit a wall, and officers later found a piece of the shotgun in the preschool's sandbox. (Id.)

The officers caught defendant and arrested him. (Id.) After receiving his Miranda warnings, defendant admitted that he was a documented Pomona County Liner gang member, though he lied to officers and claimed he wasn't active. (Id.) He also lied to officers and claimed that he never had a gun. (Id.)

2. The 2007 Assault with a Deadly Weapon Case

Defendant's 2007 assault conviction arose from an incident when, just three weeks after he was arrested with the sawed-off shotgun, defendant stabbed a rival gang member. (Ex. 7 (Ontario PD Reports) at 1-2.) Defendant was on the balcony of his Ontario apartment when he got into a shouting match with two other men. (Id. at 2.) The fight seemed to relate to gang territory, as defendant was yelling "Pomona County Line" while the two men were yelling "SGV" (San Gabriel Valley). (Id.) Defendant came down from his balcony and confronted the men. (Id. They argued for about two minutes before three of defendant's gang associates drove up. (Id.) Everyone then began fighting. (Id.) During the fight, defendant repeatedly stabbed one of the rival gang members with a knife. (Id.)

Defendant and his three gang associates were arrested and transported to the station. (Id. at 4.) Officers placed defendant and one of the gang associates alone in an interview room that was being video taped. (Id.) While in the room together, defendant and the associate talked about how they would "beat [the] case." (Id. at

4-5.) Defendant said that he would make some phone calls to make sure that the other two gang associates and the witnesses didn't "snitch." (Id. at 5.)

3. The 2010 Assault with a Deadly Weapon Case

Defendant's 2010 assault conviction arose from an incident when defendant and another man threatened and beat a man with a pistol. (Ex. 8 (Upland PD Report) at 1-2.) The beating seemingly related to other criminal activity since the victim was reluctant to cooperate with the police and seemed to cover up the real reason for the assault. (Id. at 3-4.) But, in any event, the victim's grandmother witnessed the assault, and she independently reported the assault to police. (Id. at 2-3.) The victim was on his front porch at about midnight when defendant and another man approached him. (Id. at 2.) The victim asked the two men what was going on before defendant pulled out a pistol, racked the slide, and pointed it at the victim. The other man grabbed the victim and began punching him. (Id.) Defendant then pistol-whipped the victim in the head two to three times. (Id.) After the victim's grandmother came outside and yelled, defendant and the other man ran. (Id. at 3.)

4. The 2014 Drug Case

Defendant's 2014 drug conviction arose after defendant arranged a deal for a half pound of methamphetamine. (Ex. 9 (Riverside County Court Documents, RIF1302900) at 6-8.) A DEA investigation intercepted calls between defendant and Ahian Gilbert, a state prisoner. (Id. at 6.) Defendant and Gilbert arranged for Esmeralda Millan to meet with Nathalie in San Diego and deliver a half pound of methamphetamine to Nathalie. (Id. at 6-7.) Nathalie then drove to San Diego with another woman and a small child, met with Millan, took

the methamphetamine, and drove back to Riverside County. (Id. at 7.) Officers stopped Nathalie on the way back and arrested her with the methamphetamine. (Id.)

5. The 2023 Domestic Violence Case

Finally, defendant's 2023 domestic violence conviction arose after Riverside County Sheriff's Deputies were dispatched to a hospital. (Ex. 10 (Riverside County Sheriff's Department Report) at 1.) Defendant's then-wife told the deputies that she was home with defendant's mother the day before. (Id.) Defendant's mother found some heroin in defendant's backpack and threw it away while defendant was at work. (Id.) Defendant returned home and began to argue with his mother. (Id.) Defendant pushed his mother, and defendant's wife yelled at defendant to leave. (Id.) Defendant then attacked his wife, grabbing her by her hair and punching her repeatedly in the back of the head before defendant's mother pulled him off. (Id. at 1-2.) Defendant then left the house, and defendant's mother drove his wife to her sister's house. (Id. at 2.) While there, defendant's wife complained of a severe headache and ringing in her ears, so her sister convinced her to seek medical attention and report the crime. (Id.) Doctors diagnosed her with a concussion, strained neck muscles, a swollen right eyebrow, and swelling to the back of the head. (Id.)

Defendant's wife told deputies that she was afraid that defendant would retaliate against her for reporting the abuse. (Id.) She said that defendant had physically abused her several times in the past, but this was the first time she reported it. (Id.)

Case 5:25-cr-00189-SSS Document 1 Filed 05/21/25 Page 18 of 23 Page ID #:59

**III. ARGUMENT**

Defendant has a long and violent criminal history. His current offenses are dangerous and serious. He also faces some of the most significant penalties imposed by federal law, and the weight of the evidence virtually guarantees he'll be convicted of the charged crimes. The Court should detain him as a danger to the community and a risk of nonappearance.

Under the Bail Reform Act of 1984, after holding a detention hearing for a criminal defendant, a judge "shall order the detention of the person before trial" when it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is required where a defendant is either a danger to the community or a risk of nonappearance; the judge need not find both. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). Finding danger must be supported by clear and convincing evidence, 18 U.S.C. § 3142(f), while finding risk of nonappearance need only be supported by a preponderance of the evidence, Motamedi, 767 F.2d at 1406.

A court must consider a list of factors to decide whether these standards are met. 18 U.S.C. § 3142(g). Those factors are: (1) "the nature and circumstances of the offense charged, including whether the offense involves a . . . firearm"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . criminal history, and record concerning appearance at court proceedings," and "whether, at the time of the current offense or arrest, the person was on probation [or] on parole . . . for an

Case 5:25-cr-00089-SSS Document 10 Filed 06/17/25 Page 19 of 23 Page ID #:60

offense under Federal, State, or local law"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id.

**A. Nature and Circumstances of the Offenses**

The nature and circumstances of the charged offenses weigh heavily in favor of detention.

The nature of the charged offenses is serious. The law rightly determines that a felon merely possessing a firearm is too big of a risk for society to bear. See United States v. Walker, 68 F.4th 1227, 1238 (9th Cir. 2023) (weighing the § 3142 factors and stating that "while an offense under § 922(g)(1) is considered nonviolent, it is a serious felony" (internal citation omitted)). Defendant isn't just a felon, though; he's an armed career criminal by virtue of his four violent felony convictions. On top of that, defendant is charged with illegally possessing a short-barreled rifle. Short-barreled rifles "are inherently dangerous and, when possessed unlawfully, serve only violent purposes." U.S.S.G. § 4B1.2, amend. 798 (effective Aug. 1, 2016). Defendant is charged with being the most dangerous kind of felon possessing multiple firearms, including one of the most dangerous kinds of firearms.

The nature of ACCA's penalties also raises the risk of nonappearance. That crime carries a mandatory minimum of 15 years' imprisonment and a maximum of life imprisonment. That is far more than defendant has ever served, giving him a significant incentive to run. See United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

The circumstances of the charged offenses are equally serious. Defendant didn't just possess firearms; he was conspiring with others in an interstate firearm-trafficking scheme. He spoke about being able to sell any number of firearms, including extremely dangerous firearms like .50 caliber rifles and dangerous and inherently illegal items like MCDs. Defendant not only threatened society by possessing firearms as a violent felon; he threatened society by illegally trafficking them to others. To make matters worse, he told the UC that he met his firearms source while serving time in state prison. Rather than use his prison term to reflect and change his life of crime, he used the opportunity to make criminal connections and further his life of crime after release.

**B. Weight of the Evidence**

The evidence that defendant committed the charged offenses is overwhelming. The weight of the evidence supports that defendant is a danger to the community (because it shows that he committed the dangerous acts with which he's charged) and a risk of nonappearance (because it shows that he will almost certainly be convicted of crimes with stiff penalties).

Defendant was recorded on phone calls, in text messages, and on covert audio and video recorders selling firearms and ammunition to the UC in four separate deals. The phone number he used to communicate with the UC is subscribed to him. The deals all took place in front of defendant's home. The evidence leaves little doubt that defendant will be convicted of the serious crimes with which he's charged.

Nothing in § 3142's text endorses the common defense argument that the weight of the evidence is the "least important" factor or

supports categorically assigning relative weight to any of the statutory factors, and this Court should not do so. The oft-repeated statement that the strength of the evidence deserves the "least weight" originated in United States v. Honeyman, 470 F.2d 473, 474 (9th Cir. 1972), but only in the context of applying the factors to that specific case. While one factor might outweigh others in a particular case, the Court cannot treat one factor as less important in all cases. See United States v. Zhang, 55 F.4th 141, 149 (2d Cir. 2022) ("[T]he weight given to each factor will inevitably vary from case to case."). Indeed, various courts have questioned and criticized creating any hierarchy of factors. See, e.g., United States v. Calabrese, 436 F. Supp. 2d 925, 927 n.3 (N.D. Ill. 2006) (rejecting any hierarchy, stating that "[s]ubsequent Ninth Circuit opinions seized on Honeyman's language but without discussing the justification for favoring one," and noting that "it is difficult to see how this factor could always be less important than others," offering examples).

The weight of the evidence is a crucial factor where defendant is charged with dangerous crimes, where defendant faces extremely strict penalties, and where the evidence is overwhelming. The Bail Reform Act "permits the court to consider the nature of the offense and the evidence of guilt" but "neither requires nor permits a pretrial determination that the person is guilty." Motamedi, 767 F.2d at 1408. "These factors may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community." Id. In a case like this, where the strong evidence shows that defendant committed dangerous acts and shows that he will almost certainly face a long term of imprisonment,

the weight of the evidence is extremely important vis-à-vis danger and risk of nonappearance.

**C. Defendant's History and Characteristics**

Defendant's criminal history and past conduct also weigh heavily in favor of detention. Defendant has felony convictions in four separate cases for violent offenses, two separate cases for drug trafficking, and one case for illegal firearm possession. He carried a sawed-off shotgun near a preschool. He spontaneously got into a fight where he repeatedly stabbed a rival gang member. He accosted a man, pointed a gun at him, and pistol-whipped him in front of the man's grandmother. He assaulted his own mother because she threw away his heroin and brutally beat his wife to hospitalization simply because she tried to intervene. After sustaining felony convictions in at least seven separate cases, he continues to possess and traffic firearms.

Further, the Pretrial Services Report will show that he committed many of these crimes while on probation, parole, or post-release community supervision. For many years, defendant consistently disregarded officers supervising him by continuing to commit violent crimes. Pretrial release in this case would go no differently. Even when "proposed release conditions are strict, . . . [i]n order to be effective, they depend on [a defendant's] good faith compliance." United States v. Hir, 517 F.3d 1081, 1092 (9th Cir. 2008) (citing United States v. Tortora, 922 F.2d 880, 887 (1st Cir. 1990)). "If past is prologue, then promises to hew the straight and narrow will mean next to nothing to this defendant." Tortora, 922 F.2d at 887.

**D. The Nature and Seriousness of the Danger Posed**

The danger that defendant would pose if released is violent and serious. Different kinds of danger can justify a defendant's detention under § 3142. See, e.g., United States v. Reynolds, 956 F.2d 192, 192-93 (9th Cir. 1992) (holding that "danger may, at least in some cases, encompass pecuniary or economic harm"). Defendant's history and the current charges show that he poses a danger of trafficking in dangerous items like firearms and drugs. But more importantly, defendant poses a clear danger of violent, physical harm. And this is not just a defendant getting into small scuffles. Defendant poses a risk of stabbing others, carrying inherently dangerous weapons, invading people's homes and threatening them at gunpoint, or beating his loved ones. His release would pose a serious danger of the highest order.

**IV. CONCLUSION**

For the foregoing reasons, the Court should order defendant detained pending trial.

The government certifies that this brief contains 4,168 words, which complies with the word limit of Local Civil Rule 11-6.1.

**CERTIFICATE OF SERVICE**

I, Stephanie Ascencio, declare:

That I am a citizen of the United States and a resident of or employed in Riverside County, California; that my business address is the Office of United States Attorney, 3403 Tenth Street, Suite 200, Riverside, California 92501; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **UNITED STATES OF AMERICA'S SENTENCING POSITION FOR DEFENDANT ROY JAMES CAREY**

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☐ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☒ By email delivery, as follows:
**SEE ATTACHED**

☐ By messenger, as follows:

☐ By Federal Express, as follows:

This Certificate is executed on **May 11, 2026**, in Riverside, California. I certify under penalty of perjury that the foregoing is true and correct.

/s/ *Stephanie Ascencio*
Stephanie Ascencio
Legal Assistant

**ATTACHMENT**

Donna Vasquez
Presentence USPPSO
Los Angeles (Roybal), California
Donna_Vasquez@cacp.uscourts.gov